per curiam:
El Sr. Eric Romero de León se quejó ante nos por la alegada conducta desacertada del Ledo. Enrique J. León Malavé, quien lo representaba en un proceso de revi-sión de pensión alimenticia para sus dos hijos. Vista la referida queja, le ordenamos al Procurador General iniciar la investigación de rigor y, posteriormente, la presentación de la querella de marras. Designamos oportunamente a la Leda. Eliadís Orsini Zayas como Comisionada Especial para que recibiera la prueba y nos rindiera un informe con sus recomendaciones. Examinado ese Informe y la réplica del licenciado León Malavé, suspendemos inmediatamente al abogado querellado por el término de un (1) año, pues su indiferencia es prueba contundente de una práctica jurí-dica deficiente.
I
Los hechos que narramos a continuación surgen del In-forme de la Comisionada Especial, Leda. Eliadís Orsini Zayas.
El señor Romero de León contrató al licenciado León Malavé para que le representara en un proceso de revisión de pensión alimenticia. El mismo día en que fue contra-tado, el licenciado León Malavé contestó la solicitud de au-mento de pensión instada por la ex esposa de su cliente. Posteriormente, las partes cumplimentaron sus respecti-vas planillas de información personal y económica. Ade-más, asistido por el licenciado León Malavé, el señor Romero de León contestó un interrogatorio que sometió su ex esposa; sin embargo, a ésta no se le requirió un descubri-miento de prueba.
Luego de estos trámites iniciales, el Tribunal de Pri-mera Instancia citó a las partes. Según el expediente de los procedimientos en ese foro, la fecha de la audiencia fue *1040 notificada a todas las partes y a sus representantes según las direcciones registradas en autos. No obstante, ni el se-ñor Romero de León ni el licenciado León Malavé compare-cieron a la audiencia señalada, aunque sí estuvieron pre-sentes la ex esposa del primero y su abogada. Celebrada la vista sin la presencia del padre alimentante o de su repre-sentante, el tribunal dictó una resolución mediante la cual aumentó la pensión a una suma que resultó ser más del doble del importe fijado originalmente. Dicha resolución fue notificada a todas las partes. El licenciado León Malavé y el señor Romero de León aceptan haberla recibido.
Inconforme, el señor Romero de León le pidió a su abo-gado que recurriera de esa determinación por entender que se le violó su derecho a ser escuchado. En vista de ello, el licenciado León Malavé presentó una moción de reconside-ración treinta y un días después de notificada la resolución que aumentó la pensión. En dicha moción no se expuso excusa, razón o argumento alguno dirigido a justificar la incomparecencia del querellado o del señor Romero de León a la audiencia señalada. Sólo se limitó a pedir que se considerara evidencia “importante” que no se tomó en cuenta al decretar el aumento reseñado. No se imputó error alguno respecto de la actuación de la juez al celebrar la vista sin el padre alimentante. El licenciado León Malavé envió una Copia de esa moción a su cliente.
Sometida la reconsideración, el señor Romero de León presentó, por derecho propio, al tribunal una “Moción In-formativa y Solicitud”, en la que argumentó desconocer por qué su representante nunca le notificó sobre la vista de aumento de pensión. Negó, a su vez, haber tenido conoci-miento de ésta. Solicitó, por ende, que se le permitiera ex-presarse y presentar prueba para poder estar en mejor po-sición de aceptar un aumento de pensión. En ese escrito, anunció también que deseaba la renuncia del licenciado León Malavé y que contrataría una nueva representación legal. El mismo día que presentó la referida moción, Ro *1041 mero de León visitó las oficinas de su abogado y le pidió por escrito la renuncia. El abogado accedió y presentó ante el tribunal una moción con ese fin, la cual fue acogida dos semanas después.
Luego de considerar el asunto, el tribunal rechazó de plano la moción presentada por el licenciado León Malavé. Sin embargo, ante la moción presentada por el padre ali-mentante, decidió celebrar una vista a la cual también citó al licenciado León Malavé. La orden adelantó, además, que el tribunal no violó el derecho de Romero León al debido proceso de ley, pues fue citado por conducto de su abogado y ambos optaron por no comparecer. En esa vista, el licen-ciado León Malavé informó por primera vez que nunca re-cibió la notificación en controversia. En iguales términos se expresó el señor Romero de León. La juez acotó que la no-tificación de la vista fue enviada tanto a las partes como a sus abogados. Destacó, además, el hecho de que la ex es-posa del señor Romero de León y su abogada comparecie-ron, mas el alimentante y su abogado no. Finalmente, de-claró “no ha lugar” la “pretensión” de que el tribunal celebrase una nueva vista.
A raíz de estos incidentes, y luego de los trámites de rigor, el Procurador General presentó una querella en la que imputó al licenciado León Malavé haber violado los Cánones 12, 18 y 26 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, por: (1) faltar a una vista debidamente notificada; (2) presentar una moción de reconsideración fuera del término para ello, y (3) no atender el caso de su cliente adecuadamente y con la diligencia esperada de todo profesional competente.
Examinamos dichas imputaciones conforme con las de-terminaciones de hecho de la Comisionada Especial y de acuerdo con nuestro ejercicio inherente facultad disciplinaria.
*1042 hH h-H
 La profesión y práctica de la abogacía no exige de quien la desempeña sólo la competencia mínima de reali-zar el esfuerzo suficiente para sobrellevarlas cada día. Re-quiere algo más. En las manos de los abogados y abogadas de Puerto Rico descansan las vidas, los bienes y las espe-ranzas de personas que procuran el auxilio de nuestro sis-tema de justicia con sumo fervor. Así pues, el abogado es el intermediario en quien nuestra sociedad confía la tarea de guiar las causas de sus clientes con sensibilidad, eficiencia y la mayor pericia. Tomada razón de que se le concede al abogado tan singular ministerio, con el Código de Etica Profesional hemos establecido unas normas precisas, de cumplimiento necesario e inexcusable, que esbozan el com-portamiento idóneo esperado de todo miembro de la profe-sión legal.
El Código de Ética Profesional y los cánones contenidos en éste, como es sabido, no representan una guía taxativa de las obligaciones que todo abogado tiene para con sus clientes, los tribunales, la profesión y la sociedad puertorriqueña. Más bien establecen unas pautas mínimas que deben guiar a los abogados en el desempeño de su profesión. In re Pagán Pagán, 171 D.P.R. 975 (2007). En ese sentido, hemos expresado consecuentemente que puede haber situaciones que escapen al alcance aparente de los cánones y, aún así, en función del buen juicio y la prudencia requeridos de todo letrado, se imponga la abstención. In re Carreras Rovira y Suárez Zayas, 115 D.P.R. 778, 785 (1984); B. & L., Inc. v. P.R. Cast Steel Corp., 114 D.P.R. 808, 813 (1983). No extraña, pues, que la responsabilidad de un abogado con respecto de las normas éticas que rigen la profesión es personal e indelegable. In re Moreno Cortés, 159 D.P.R. 542, 549 (2003). En esta ocasión, se le imputa al querellado la infracción de tres de esas normas. Veamos.
*1043 A. El Canon 12 del Código de Ética Profesional impone a todo abogado el deber de ser puntual en su asistencia y en el trámite de las causas que sus clientes traen a su atención. 4 L.P.R.A. Ap. IX. Además, éstos deben ex-hibir todas las diligencias necesarias para asegurarse de no causar dilaciones injustificadas en la tramitación y solución de los casos en que intervengan. Véanse: In re Fernández Díaz, 172 D.P.R. 38 (2007); In re Grau Díaz, 154 D.P.R. 70, 75-76 (2001); In re Pagán Hernández, 141 D.P.R. 113, 118 (1996); Heftier Const. Co. v. Tribunal Superior, 103 D.P.R. 844, 846-847 (1975); Acevedo v. Compañía Telefónica de P.R., 102 D.P.R. 787, 791 (1974).
Por ejemplo, un abogado no puede decidir a su arbitrio a qué vistas comparece o no. La facultad de suspender una vista o un juicio no puede descansar en la discreción de un abogado postulante; ésta corresponde, sin duda alguna, al funcionario judicial o administrativo que la preside. In re Arroyo Villamil, 113 D.P.R. 568, 573 (1982). La incomparecencia de un abogado a una vista debidamente citada y notificada denota su falta de respeto y su irresponsabilidad para con sus clientes y el foro. Véase In re Roídos Matos, 161 D.P.R. 373 (2004). Ahora bien, no puede penalizarse a un abogado por no comparecer a una vista que nunca se le notificó y sobre la que tampoco se enteró por otro medio. In re Rosado Nieves, 159 D.P.R. 746, 762 (2003).
B. El Canon 18, por su parte, requiere que los abogados no asuman la representación legal de un cliente cuando sean conscientes de que no pueden realizar una labor idónea y competente, o de que no pueden prepararse adecuadamente para defender las causas de éste sin aumentar irrazonablemente sus gastos o los del sistema de justicia. 4 L.P.R.A. Ap. IX, C. 18. Además, todo abogado debe defender los intereses de sus clientes con la mayor diligencia, demostrando en cada una de sus intervenciones su más profundo saber y habilidad. Así, debe satisfacer —y *1044 esmerarse por exceder— aquella medida que la profesión jurídica estima como la más adecuada y responsable. La indiferencia, desidia, despreocupación, inacción y displi-cencia no son las cualidades que deben encarnar a un abo-gado admitido por esta Curia a la práctica del Derecho. In re Arana Arana, 112 D.P.R. 838, 843 (1982).
También hemos resuelto en numerosas ocasiones que todo miembro de la profesión legal tiene que defender con diligencia los intereses de sus clientes, desplegando una conducta capaz, leal, responsable, efectiva y completamente honrada. In re Martínez Miranda, 160 D.P.R. 263, 266 (2003). Véase, además, In re Acosta Grubb, 119 D.P.R. 595, 602 (1987). Un abogado que decide representar a un cliente y luego incumple con su obligación de conducirse competente y diligentemente, a la par que tampoco mantiene informado a su cliente, incurre en una violación seria del Código de Etica Profesional. In re Arroyo Rivera, 148 D.P.R. 354, 360 (1999); In re Ortiz Velázquez, 145 D.P.R. 308, 313-314 (1998). Así, hemos disciplinado a abogados quienes, tras haber sido citados a comparecer ante un tribunal de justicia, se ausentan de la audiencia sin causa o motivo justificado alguno. In re Marrero Luna, 166 D.P.R. 578 (2005); In re Marrero Figarella, 146 D.P.R. 541 (1998); In re Coll, 101 D.P.R. 799 (1973).
C. Por último, el Canon 26 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, establece que, de ordinario, ningún abogado tiene la obligación de representar a determinado cliente. Por lo tanto, es derecho del abogado aceptar o rechazar una representación profesional, por lo que en su gestión debe obedecer siempre los designios de su propia conciencia y no los de su representado. Por ejercer una profesión que exige la mayor responsabilidad, un abogado no puede relevarla si incurre en actos u omisiones negligentes en el ejercicio de su labor. Véase, además, In re Acosta Grubb, supra; Quiñones v. Jiménez Conde, 117 D.P.R. 1 (1986).
*1045 Cuando un abogado asume una representación legal, debe realizar toda gestión a su alcance, dentro del marco de la ley y la ética, para adelantar los intereses de su representado. Sin embargo, un cliente que presenta una querella por el mero hecho de no obtener el resultado esperado en un pleito, sin más, no aduce hecho alguno que requiera nuestra intervención. Por ende, no incurre en violación ética alguna un abogado que le brinda a su cliente una opinión —con sosiego y prudencia— sobre los méritos de su reclamación y las oportunidades de prevalecer. Véase, e.g., In re García Marrero, 120 D.P.R. 278 (1988).
III
Es norma reiterada de este Tribunal que no alteraremos las determinaciones de hecho de una Comisionada Especial, salvo cuando se demuestra su parcialidad, prejuicio o error manifiesto. In re Fernández de Ruiz, 167 D.P.R. 661 (2006); In re Morales Soto, 134 D.P.R. 1012, 1015-1016 (1994). Luego de analizar cuidadosamente el informe que la Comisionada Especial nos ha rendido, no hallamos ninguna razón para intervenir con su evaluación de la prueba. Consideradas sus determinaciones de hecho, estimamos que existe prueba clara, robusta y convincente que nos requiere disciplinar al querellado. Veamos por qué.
A. Del Informe de la Comisionada Especial y sus ane-jos surge, sin lugar a dudas, que la vista sobre aumento de pensión celebrada el 29 de octubre de 2003 fue notificada debidamente el 7 de octubre de 2003. De la faz de la noti-ficación emitida por el Tribunal de Primera Instancia no-tamos que copia de ésta se remitió a los abogados y a las partes. Según nos expresa la Comisionada Especial, no existe controversia sobre la corrección de las direcciones utilizadas para cursar la notificación; tampoco sobre el he-cho de que todas las notificaciones anteriores y posteriores a la de referencia fueron enviadas a las mismas direcciones y que, en efecto, fueron recibidas. La Comisionada eon- *1046 cluye, entonces, que la notificación a la vista se recibió, mas el querellado y Romero de León optaron por no comparecer. Estamos de acuerdo.
En primer término, nos resulta increíble que el licen-ciado León Malavé justifique su incomparecencia a la vista reseñada con el argumento de que su cliente recibió la no-tificación, pero tampoco fue. Aparte de reiterar ante la Co-misionada Especial que él nunca recibió la notificación, también expresa con cierta vehemencia que el Tribunal de Primera Instancia optó por celebrar la vista sin la presen-cia de su cliente.(1) Sin embargo, resalta del Informe que el propio licenciado León Malavé, en su comparecencia ante esta Curia, expresa que él revisó personalmente el expe-diente en el Tribunal de Primera Instancia, luego de reci-bir la resolución con el decreto sobre aumento de pensión. Alega que fue tras esa revisión que conoció del envío de la notificación. Es decir, confirmó que la notificación se había enviado.
Aunque, de por sí, el hecho reseñado no nos lleva a con-cluir que la citación fue recibida, el esquema de derecho probatorio puertorriqueño nos convence de que, en reali-dad, la notificación sí se recibió. La Comisionada Especial concluyó que según la Regla 16(24) de Evidencia, 32 L.P.R.A. Ap. IV, debe presumirse que una carta debida-mente cursada fue recibida oportunamente y que, en con-secuencia, la notificación de la vista llegó a manos del querellado. La copia de la notificación certificada por el tribunal sentenciador para el procedimiento disciplinario ante nos, estableció el hecho básico de la presunción: que la carta fue enviada. Así, pues, al licenciado León Malavé le correspondía rebatir tal presunción con prueba tendente a *1047 demostrar que el hecho presumido nunca ocurrió, es decir, que la notificación jamás se recibió.
El querellado no refutó esta presunción con prueba alguna. Adujo que pudo haber un error clerical en el enso-brado de la notificación o que el personal de la Secretaría del Tribunal de Primera Instancia la envío equivocada-mente a otra dirección. Argumentó que en otras ocasiones había sucedido esto, pero no produjo evidencia documental o testifical que permitiera dar credibilidad a su contención. Consideramos, por lo tanto, que la conclusión de la Comi-sionada Especial es correcta: la notificación, en efecto, se recibió. No es la primera vez que aplicamos esta presun-ción específica de las Reglas de Evidencia a un procedi-miento disciplinario. Por ejemplo, en In re Colón Muñoz, 131 D.P.R. 121, 151 (1992), resolvimos que una carta en-viada por un Inspector de Protocolos de la Oficina de Ins-pección de Notarías fue recibida, invocando así la Regla 16(24) de Evidencia, supra. Véanse, además: Hawayek v. A.F.F., 123 D.P.R. 526, 531 (1989); E.L. Chiesa Aponte, Tratado de Derecho Probatorio, San Juan, Pubs. J.T.S., 1998, Vol. 2, Sec. 12.5, pág. 1111
Abona a esta conclusión el hecho de que el propio licen-ciado León Malavé expresó que “las partes fueron debida-mente citadas según consta en el expediente del tribunal, razón por la cual entendíamos que [aun] cuando no llegó tal citación a nuestras manos, no se había violado el debido proceso de ley”. (Énfasis suplido.)
El querellado tenía que demostrarnos que no recibió la notificación mediante alguna evidencia suficiente para de-rrotar la presunción de la Regla 16(24) de Evidencia, mas no lo hizo. Por consiguiente, concluimos que el querellado violó el Canon 12 del Código de Ética Profesional, supra.
B. Por otra parte, la Comisionada Especial encontró probado el cargo relacionado con la impericia del licenciado León Malavé en torno a la moción de reconsideración que presentó ante el tribunal de instancia. En su Informe, la Comisionada expresa que si la notificación verdadera- *1048 mente no llegó, era esencial exponerle tal situación al Tribunal de Primera Instancia en cualquier solicitud de re-consideración, pues la notificación a una vista es parte indispensable del debido proceso de ley. No obstante, deter-minó que el licenciado León Malavé no expuso ningún ar-gumento o información que colocara al tribunal de instan-cia en posición de reevaluar su dictamen. En vez de plantear alguna violación en ese sentido, lo descartó de plano y se limitó a reiterar argumentos sobre nueva prueba de importancia para el caso. Esta prueba no pudo presentarla por haberse ausentado de la vista citada y no-tificada debidamente.
La Comisionada determinó, además, que no tan sólo el licenciado León Malavé erró al no expresarse sobre la falta de notificación, sino que presentó la moción de reconside-ración unos treinta y un días después de notificada la resolución. Actuó así, a pesar de ser de conocimiento general en la práctica legal puertorriqueña, que solamente se cuenta con quince días a partir de la notificación de la sen-tencia para presentar una moción de reconsideración ante un tribunal de instancia. Regla 47 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Estamos convencidos de que el proce-der del querellado no sólo refleja su indiferencia hacia la causa de su cliente, sino que demuestra un claro descono-cimiento de las normas procesales imperantes en nuestra jurisdicción.
Ante su omisión, el licenciado León Malavé argumenta que presentar una moción de reconsideración tan tardía-mente fue sólo una inadvertencia, pues se le “olvidó”. Adujo que el tribunal de instancia bien pudo haber acogido la moción de reconsideración como una moción de relevo de sentencia, y que el tribunal no denegó la reconsideración por haberse presentado tarde, sino “por lo expuesto en dicho escrito”. No cabe duda que el querellado mantiene la actitud de justificar sus acciones y omisiones, mas sus ra-zones nos resultan claramente insuficientes.
Más bien, creemos que las acciones y omisiones *1049 en que incurrió el licenciado León Malavé revelan su irres-ponsabilidad y contumacia. De hecho, ante este Tribunal, mediante su representante legal, continuó negando cual-quier responsabilidad e intentó justificar su impericia con alegadas faltas de su cliente. Esta actitud, sin duda, es contraria al Canon 26 del Código de Ética Profesional, supra, que tacha como impropio que un abogado intente re-levar su responsabilidad por su incompetencia profesional. Que su cliente tuviese que presentar por derecho propio una moción ante el tribunal de instancia, aun cuando tenía representación legal, nos demuestra que su comunicación con el señor Romero de León no existía o, cuando menos, era insuficiente. Igual falta de interés hemos notado en sus comparecencias durante el procedimiento de marras.
IV
Por las razones antes expresadas, concluimos que el Ledo. Enrique J. León Malavé infringió los referidos Cáno-nes 12, 18 y 26 del Código de Ética Profesional. Su con-ducta constituyó una grave afrenta a las normas éticas que rigen la profesión jurídica en Puerto Rico y causó un gran perjuicio a su cliente. En consecuencia, lo suspendemos in-mediatamente del ejercicio de la abogacía por el término de un (1) año.
El querellado notificará a sus clientes que por motivo de la suspensión no puede continuar con su representación legal y les devolverá los expedientes de los casos pendien-tes y los honorarios recibidos por trabajos no realizados. Asimismo, informará de su suspensión a cualquier Sala del Tribunal General de Justicia o a cualquier foro administra-tivo donde tenga algún caso pendiente.
Por último, tiene la obligación de acreditar y certificar ante este Tribunal, en el término de treinta días, que cum-plió con lo antes señalado. El cumplimiento con estos de-beres será notificado también al Procurador General. El Alguacil de este Tribunal se incautará inmediatamente de *1050 la obra y del sello notarial del abogado de epígrafe para el trámite correspondiente por la Directora de la Oficina de Inspección de Notarías.

Se dictará Sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez no intervino.

 Este argumento parece basarse en el entendido de que si un abogado o su cliente faltan a una vista, el tribunal tiene que suspenderla. Claramente, tal preten-sión no encuentra apoyo en las normas reglamentarias del Poder Judicial. Dicha conducta constituiría una falta de respeto a los jueces y a las juezas del país. Un abogado que en el futuro funde su incomparecencia en dicha “esperanza”, podría enfrentar serias consecuencias disciplinarias.